UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SECURE DATA TECHNOLOGIES, INC.    )
                                  )
           Plaintiff,             )
                                  )
    vs.                           )        Case No: 4:20CV1228 HEA
                                  )
JAMIE GUILFORD, et al.,           )
                                  )
           Defendants.            )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Set Aside Default,
[Doc. No.  11]. Plaintiff opposes the Motion, which has been fully briefed. For the
reasons set forth below, the Motion is granted.

### Background

On September 10, 2020, Plaintiff filed its Complaint alleging claims for
Breach of Contract, Tortious Interference with Plaintiff's Contracts and/or Business
Expectancies, Unjust Enrichment, Misappropriation of Trade Secrets in Violation
of the Illinois Uniform Trade Secrets Act ("ITSA"), 765 ILCS 1065/1, *et seq*.,
Violations of Stored Wire and Electronic Communications Act ("SECA"), 18
U.S.C. § 2701, *et seq.*, Violations of Computer Fraud and Abuse Act ("CFAA"), 18
U.S.C. § 1030, *et seq.*, Violation of the Missouri Statute Against Tampering with
Computer Data and Equipment, RSMo. § 537.525, and the Missouri Statute

Against Tampering with Computer Equipment, RSMo. § 569.097. Defendants were served with summons and a copy of the Complaint on September 17, 2020.

On October 20, 2020, Plaintiff agreed to and filed a stipulation for an extension of time for Defendants to answer or otherwise respond to the Complaint by October 28, 2020. By October 28, Defendants had not filed a responsive pleading. On October 29, 2020, Defendants moved for entry of Clerk's Default against Defendants. Clerk's Default was entered on November 6, 2020.

On November 13, 2020 new counsel entered on behalf of Defendants. On November 18, Defendants filed the instant Motion to Set Aside Default, which is verified by the affidavit of Defendant Jamie Guilford (hereinafter, "Ms. Guilford"). Defendants state that they initially hired as counsel and paid a fee to S. Cody Reinberg of HKM Employment Attorneys, LLP ("HKM"). According to Defendants, there was no written representation agreement with HKM or Reinberg to show the scope of the representation. Attorney Reinberg tried to initiate settlement discussions with Plaintiff but did not get a settlement demand from Plaintiff's counsel. It was at this point that the parties agreed to extend the time for Defendants to file a responsive pleading to October 28, to allow for settlement discussions. No settlement was reached.

Although Ms. Guilford knew that HKM had not committed to defend the lawsuit, she assumed that because Attorney Reinberg had obtained an extension of time to file a responsive pleading, that he would also file Defendants' answer or

other responsive pleadings. Neither Reinberg nor any other HKM attorney filed a responsive pleading. When Defendants realized that no answer had been filed, Ms. Guilford contacted HKM to inquire as to why. Attorney Reinberg replied that he did not file an answer because HKM was not defending Defendants in the litigation. Defendants assert that the scope of representation to be provided by HKM was seriously unclear. Once Defendants learned that HKM was not representing them further, Defendants obtained their present counsel.

## Discussion

Defendants now move the Court to set aside the Clerk's Default entered in favor of Plaintiff and against Defendants pursuant to Fed. R. Civ. P. 55(c). Rule 55(c) provides "[t]he court may set aside an entry of default for good cause." A ruling on a motion to set aside a default judgment is committed to the sound discretion of the district court. *Stephenson v. El–Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008). When examining whether good cause exists, the district court should weigh "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Stephenson*, 524 F.3d at 912 (quoting *Johnson v. Dayton Elec. Manuf. Co.*, 140 F.3d 781, 783–84 (8th Cir.1998)). The Court is mindful of the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits rather than resolution of cases

through default judgment. *See United States on behalf of Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir.1993).

Defendants state that they did not intend to delay the resolution of this matter or intentionally avoid or evade their responsibilities in this litigation. Defendants further assert that they have meritorious defenses to each of Plaintiff's Counts in the Complaint.

*(1) Whether Defaulting Party Was Blameworthy or Culpable*

Under the "good cause" standard, the Court must first examine the culpability of the defaulting party. *Stephenson*, 524 F.3d at 912. The Eighth Circuit recognizes a distinction between "contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines." *Johnson*, 140 F.3d at 784. While the Eighth Circuit "rarely, if ever excuse[s] the former," it "has often granted Rule 55(c) and Rule 60(b) relief for marginal failures when there were meritorious defenses and an absence of prejudice." *Id.*

According to Ms. Guilford's affidavit, Defendants' failure to file an answer "was the result of an unfortunate misunderstanding on the part of Defendants as to the scope of the representation to be provided by the HKM firm." Ms. Guilford states that there was "a serious lack of clarity" as to the scope of representation HKM was to provide. She further avers that the failure to file an answer was not intentional or meant to delay these proceedings.

Plaintiff argues that Defendants' failure to timely answer the Complaint was blameworthy and culpable. Plaintiff contends that Ms. Guilford's affidavit is "self-serving" and insufficient to address the question of good cause because therein, Ms. Guilford "seeks to verify claims as to [her] attorney's behavior of which [she] cannot claim first-hand knowledge." It is unclear to what claims Plaintiff is referring, as the only second-hand knowledge statement regarding an attorney's behavior that the Court can identify in the affidavit pertains to attempted settlement discussions between Attorney Reinberg and Plaintiff's counsel, and this statement is inconsequential to the instant Motion.

Plaintiff also disputes Ms. Guilford's claim that she did not understand that Attorney Reinberg would not file an answer in this case, on the basis that Ms. Guilford also averred that she "knew the HKM firm had not committed to defend the lawsuit." Additionally, Plaintiff complains that there is nothing in the record to suggest that the scope of HKM's representation was unclear or that Ms. Guilford's confusion was justified. These arguments are unavailing. Guilford clearly averred that "[t]here was no written agreement of representation" and that she wrongly reasoned that because Attorney Reinberg filed for the extension of time to file an answer, he would also file an answer. Ms. Guilford's confusion is not incredible.

This case is also distinguishable from *Hall v. T.J. Cinnamon's, Inc.*, 121 F.3d 434 (8th Cir. 1997), upon which Plaintiff relies. In *Hall*, the defendant not only did not answer the complaint, it also sent a letter to the district court before the default

judgment hearing stating it would not retain local counsel due to poor financial status, failed to appear at the hearing, and failed to enter an appearance. *Id.* at 435. However, after the district court entered default judgment against it, the defendant retained local counsel and appealed default judgment. *Id.* The facts of the instant case are not analogous. Defendants have not ignored this litigation or misrepresented that they would not defend against it. Defendants have established that their failure to file an answer by the October 28 deadline was not the result of contumacious or intentional delay or disregard for deadlines and procedural rules. This factor weighs heavily in favor of setting aside the Clerk's Default.

### (2) The Danger of Prejudice to the Non–Moving Party

As the Eighth Circuit has repeatedly cautioned, "prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Johnson*, 140 F.3d at 785. The prejudice must be more concrete, for example, loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. *Id.* Here, the record does not reveal that Plaintiff would incur any of these difficulties if the clerk's entry of default were set aside. Nor does Plaintiff claim any prejudice in its briefing. The prejudice factor weighs in favor of setting aside the Clerk's Default.

### (3) Meritorious Defense

"Whether a meritorious defense exists is determined by examining whether the proffered evidence would permit a finding for the defaulting party."

*Stephenson*, 524 F.3d at 914 (internal quotations omitted). "The underlying concern is ... whether there is some possibility that the outcome ... after a full trial will be contrary to the result achieved by the default." *Id.* (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2697 (2d ed. 1983)). The Court need only to determine whether the proffered evidence would permit a finding for defendant. *See Johnson*, 140 F.3d at 785.

Defendants' proffered defenses each include one or more of the following arguments: that the non-compete agreement is unenforceable for overbreadth, as the restriction on selling to or soliciting business is not limited geographically[1]; that Tacony Company ("Tacony," the client of Plaintiff's whose business was allegedly lured away by Defendants,) sought Defendants out, rather than Defendants soliciting Tacony; that Ms. Guilford was given administrative access to Plaintiff's system and that her access was authorized; and, that Ms. Guilford denies she removed information or altered Plaintiff's computer in any fashion.

As to Count I – Breach of Contract, Defendants' assertion that the employee non-compete agreement is unenforceable for overbreadth is meritorious. As cited by Defendants, in *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 841-42 (Mo. banc 2012), the Missouri Supreme Court stated that a non-compete agreement is

---

[1] Contrary to Defendants' assertion that the agreement is not limited temporally, the non-compete agreement (as attached to the Complaint) appears to include a temporal limit of one year.

enforceable if it is demonstratively reasonable, that is, "if it is no more restrictive than is necessary to protect the legitimate interests of the employer." *Id.* at 841. *Whelan* further provides that the reasonability of a customer non-solicitation clause is based on myriad factors, including but not limited to: the quality, frequency, and duration of an employee's exposure to an employer's customers, the amount and location of the employer's customers, and the former employee's position with the employer. *Id.* at 842. Given that determining the enforceability of non-compete agreements requires a highly case-specific, balance-of-interests analysis in which a major consideration is geographic limitations, the Court finds that Defendants have put forth a meritorious defense to Count I.

As to Count II – Tortious Interference with Plaintiff's Contracts and/or Business Expectancies, Count III – Unjust Enrichment, and Count IV – Violation of the Illinois Trade Secrets Act, Defendants argue that because Tacony sought them out, Defendants are not liable for the wrongs alleged. For Counts II and III, Plaintiffs contend that Defendants are liable because of Ms. Guilford's breach of the non-compete agreement. Given that the Court found, with respect to Count I, that Defendant set forth a meritorious defense regarding the enforceability of the employment agreement, it follows that the same defense would cover Count II, particularly as to the first required element of a Tortious Interference with Plaintiff's Contracts and/or Business Expectancies claim: that a contract or valid business expectance exists. *Ozark, Inc. v. Copeland*, 198 S.W.3d 604, 614 (Mo.

banc 2006) (listing the elements of a claim for tortious interference with a contract or business expectancy). Similarly, the unenforceable contract defense can apply to Count III.

As for Count IV – Misappropriation of Trade Secrets in Violation of the Illinois Uniform Trade Secrets Act ("ITSA"), Plaintiff's Complaint alleges that Guilford retrieved from Plaintiff's proprietary software system customer information including customer lists, bids, service history, and sales quotations. In addition to asserting that Tacony sought out Defendants, Ms. Guilford also avers that she did not remove any trade secrets from Plaintiff, as is alleged by Plaintiff in support of their ITSA claim. Although Plaintiff argues that Ms. Guilford's affidavit lacks sufficient facts to establish a meritorious defense, at this point in the litigation, it would be premature for the Court to conclude that Ms. Guilford's sworn statement is false; thus, it represents a meritorious defense.

As to Count V – Violations of Stored Wire and Electronic Communications Act ("SECA"), Count VI – Violations of Computer Fraud and Abuse Act ("CFAA"), and Count VII – Violation of the Missouri Statute Against Tampering with Computer Data and Equipment, RSMo. § 537.525, and the Missouri Statute Against Tampering with Computer Equipment, RSMo. § 569.097, Defendants argue that Ms. Guilford was given administrative access to Plaintiff's system by Plaintiff, and therefore her access to the system email was authorized. Defendants also argue that the statutes underlying Counts V, VI, and VII each require that a

defendant "removed information and/or altered the computer in some fashion." Indeed, just as with Count IV, at this point in the litigation, the Court cannot conclude that Ms. Guilford's sworn statement that she did not remove information from or alter Plaintiff's computer is false; thus, it represents a meritorious defense.

The Court finds that Defendants have offered legal arguments that are sufficient at this early stage in the litigation to allow the Court to find that the asserted defenses are potentially viable. There exists some chance that the outcome of this action, after full consideration, would be contrary to the result achieved by a default. The existence of meritorious defenses to each Count of the Complaint weighs in favor of defendant in setting aside the Clerk's Default.

## Conclusion

Pursuant to Federal Rule of Civil Procedure 55(c), the Court concludes that the Clerk's entry of Default should be set aside for good cause for the reasons discussed above. At this extremely early stage of the litigation and in the face of a very minor delay caused by Defendant's seemingly genuine misunderstanding with prior counsel, the first two factors of the Rule 55(c) analysis weigh heavily in favor of setting aside the Clerk's Default, as does sound policy favoring resolution of cases on the merits. The Court will therefore grant the Defendants' Motion to Set Aside the Clerk's entry of Default.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Set Aside Default, [Doc. No. 11], is **GRANTED**.

**IT IS FURTHER ORDERED** that the Entry of Default by the Clerk dated November 6, 2020, [Doc. No. 9.] is **VACATED**.

**IT IS FURTHER ORDERED** that Defendants shall file their responses to Plaintiff's Complaint within 14 days of the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Extension of Time, [Doc. No. 5], is **DENIED** as moot.

Dated this 3rd day of February, 2021.


_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE